

FILED

2007 Mar-20  PM 03:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

JOHN FRASER a/k/a        )
ANDREW BURRELL,        )
        )
      Petitioner       )
        )
vs.        )    Case No.  4:04-cv-02431-WMA-HGD
        )
SCOTT HASSELL, CHIEF        )
CORRECTIONS OFFICER        )
FOR ETOWAH COUNTY,        )
        )
      Respondent       )


JOHN FRASER        )
        )
      Petitioner       )
        )
vs.        )    Case No.  4:06-cv-01602-HGD
        )
IMMIGRATION AND        )
NATURALIZATION SERVICE,        )
et al.,        )
        )
      Respondents       )


JOHN FRASER a/k/a        )
        )
      Petitioner       )
        )
vs.        )    Case No.  4:06-cv-02025-RDP-HGD
        )
SCOTT HASSELL, CHIEF        )
CORRECTIONS OFFICER        )
FOR ETOWAH COUNTY,        )
        )
      Respondent       )

## MEMORANDUM OPINION

### *Consolidation of Actions*

Petitioner, John Fraser a/k/a Andrew Burrell, is a native and citizen of Jamaica who became a lawful permanent resident of the United States on May 24, 1990.  He is being detained pending deportation to Jamaica.[1]  Petitioner has submitted to this court a petition for habeas corpus pursuant to 28 U.S.C. § 2241, challenging his continued detention and the validity of the removal order and seeking immediate release from custody.

The first captioned action, *Fraser v. Hassell*, Case Number 4:04-cv-02431-WMA-HGD, was filed on or about August 6, 2004.  Thereafter, respondent filed a motion to transfer the action to the United States District Court for the Eastern District of New York, on the grounds that petitioner was litigating the same deportability issues in the United States District Court for the Eastern District of New York, in *Fraser v. Ashcroft, et al.*, Case Number 1:04-cv-00733-SJ.  A review of the allegations in the petition in the New York court showed that petitioner was raising the same claims as presented in the habeas corpus petition in this court, in addition to other claims.  Because the issues had been fully briefed in the New York court, the motion to transfer was granted on March 31, 2005.

---

[1] At the time he filed his petition, Fraser was being held in the Etowah County Jail.  Since that time, petitioner has been transferred to the Federal Detention Center at Oakdale, Louisiana.

2

On February 20, 2004, Fraser filed a "Petition for Stay of Deportation and Appended Complaint" in the New York case. On or about March 30, 2004, the United States District Court for the Eastern District of New York stayed petitioner's deportation pending the resolution of his claims in that case.  An amended petition was filed by Fraser on June 7, 2004.

On August 30, 2005, the 2004 case in this court was reopened when the United States District Court for the Eastern District of New York transferred a portion of *Fraser v. Ashcroft, et al.*, Case Number 1:05-cv-02120-SJ, in which petitioner was challenging his continued detention.  Petitioner then filed a "Motion to be Release from Physical Confinement," seeking essentially the same relief as sought in his habeas corpus petition. (Doc. #19).

Thereafter, on August 15, 2006, the portion of the New York proceedings in *Fraser v. Ashcroft, et al.*, Case Number 1:04-cv-00733-SJ, in which Fraser challenged his continued detention pending deportation was transferred to this court.  It was opened as a new case, *Fraser v. Immigration and Naturalization Service, et al.*, and given Case Number 4:06-cv-01602-HGD.

On October 5, 2006, another case was opened in this court when the United States District Court for the Eastern District of New York denied petitioner's motion to reconsider the transfer order in *Fraser v. Ashcroft, et al.*, Case Number 1:05-cv-02120-

SJ.  The claims regarding continued detention that were transferred, causing the reopening of this court's case number 4:04-cv-02143-WMA-HGD, were again severed and transferred to this court.  It was opened as a new case, *Fraser v. Hassell*, and given Case Number 4:06-cv-02025-RDP-HGD.  Petitioner's habeas corpus petition again claims that his continued detention pending deportation violates his constitutional rights.

Because the habeas corpus petitions commenced here or transferred here from New York all raise the same claims and request immediate release from detention pending deportation, the actions were consolidated on March 9, 2007.

### *Criminal and Post-Conviction Proceedings*

On August 3, 1990, petitioner entered an *Alford* plea in Connecticut Superior Court to charges of third degree assault and possession of a weapon in a motor vehicle. That state court conviction was later vacated in 1999, on the ground that it was obtained illegally.  *See Burrell v. United States*, 384 F.3d 22 (2d Cir.), *cert. denied*, 543 U.S. 993, 125 S.Ct. 511, 160 L.Ed.2d 381 (2004); *Fraser v. Ashcroft*, 2003 WL 21143031 (E.D.N.Y. May 13, 2003).

On December 29, 1993, petitioner was convicted in the United States District Court for the Eastern District of New York of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1).  Petitioner was sentenced on August 30,

1995, to serve 120 months, followed by three years of supervised release. The conviction and sentence were affirmed on direct appeal, on October 18, 1996.[2]

Thereafter, on December 12, 1997, petitioner filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255, challenging his § 922(g)(1) conviction. When his Connecticut conviction was set aside, he amended the § 2555 motion to include a claim of actual innocence. The motion was denied on February 13, 2001. On appeal, the Second Circuit Court of Appeals vacated the denial of § 2255 relief and remanded the case for the district court to determine if petitioner was actually innocent of violating § 922(g)(1) because an *Alford* plea does not qualify as a conviction under Connecticut law. The district court denied the § 2255 motion on August 19, 2002. *See Burrell v. United States*, 2002 WL 31051594 (E.D.N.Y. Aug. 19, 2002), *aff'd*, 384 F.3d 22 (2d Cir. 2004).

On appeal, in July 2003, the Second Circuit stayed deportation pending resolution of the appeal. It ultimately held, on September 14, 2004, that the Connecticut judgment based on an *Alford* plea constituted a conviction within the meaning of the federal firearms statute. *Burrell v. United States*, 384 F.3d at 31.

On or about December 23, 2005, petitioner filed a motion purportedly under Rule 60, Fed.R.Civ.P., and 28 U.S.C. § 1651. He averred the court erred during the

---

[2] *See Fraser v. United States of America*, 2006 WL 2792760 (E.D.N.Y. Sept. 1, 2006).

§ 2255 proceedings in failing to hold an evidentiary hearing on his claim of actual innocence and that *Blakely v. Washington* rendered his sentence constitutionally defective. On September 1, 2006, petitioner's motion was denied. *See Fraser v. United States*, 2006 WL 2792760 (E.D.N.Y. Sept. 1, 2006). Petitioner also filed a challenge to his federal conviction based on *Blakely*. The United States District Court for the Eastern District of New York construed the motion to be a successive § 2255 motion and transferred it to the Second Circuit Court of Appeals for possible certification pursuant to 28 U.S.C. § 2244(b)(3). *See Fraser v. United States*, 2006 WL 2792763 (E.D.N.Y. Sept. 1, 2006).

***Deportation Proceedings***

On May 29, 2001, while serving his federal sentence, petitioner was served with a Notice to Appear and charged with removability from the United States. On January 23, 2002, an immigration judge found found Fraser removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) as an alien convicted of an aggravated felony and ordered him removed from the United States to Jamaica. On July 7, 2003, the Board of Immigration Appeals (BIA) affirmed the decision of the immigration judge, stating its agreement that Fraser has no relief from removal available to him in view of his aggravated felony conviction. *See id.* The BIA denied Fraser's motion for reconsideration on September 12, 2003.

6

The Bureau of Immigration and Customs Enforcement (BICE) has continued petitioner's detention pending deportation.   As grounds, ICE has determined that petitioner is a flight risk and a threat to the community.

In 2002, Fraser filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the United States District Court for the Eastern District of New York, *Fraser v. Ashcroft, et al.*, Case Number 1:02-cv-04417-SJ.  He challenged his detention by the Immigration and Naturalization Service pending a final order of removal.  Title 8 U.S.C. § 1231(a) permits bail hearings for aliens who have already had a final order of removal entered against them, once 90 days has elapsed, so that the alien may present evidence that he is not a danger to the community or a risk of flight.  Because, at that time, Fraser's order of removal was not final, the district court found that he was not entitled to be released nor entitled to an opportunity to show he was not a danger to the community or a flight risk.  *See id.*

In his Motion to be Released from Physical Confinement (Doc. #19), petitioner seeks immediate release from confinement.  As grounds, he asserts that the underlying state court conviction which led to his incarceration and order of deportation has been set aside and the conviction is thus insufficient to establish an aggravated offense.

The case of *Fraser v. Ashcroft, et al.*, Case Number 1:05-cv-02120-SJ, was opened after the 2004 case in this court was transferred to the United States District

Court for the Eastern District of New York.  On July 28, 2005, the Eastern District of New York ordered the transfer of petitioner's challenge to his final removal order to the Fifth Circuit Court of Appeals and the transfer of his challenge to detention to the United States District Court for the Northern District of Alabama.  Fraser filed a Motion to Reconsider, which was denied on August 10, 2006.  Fraser then filed an interlocutory appeal of the transfer order, which was forwarded by the Eastern District of New York to the Fifth Circuit Court of Appeals.

The Fifth Circuit Court of Appeals considered Fraser's challenge to the BIA order finding him removable.  In a decision issued on July 12, 2006, the appellate court held that the validity of Fraser's state and federal convictions was not subject to collateral attack in the removal proceedings, that Fraser failed to establish entitlement to discretionary relief from removal or entitlement to relief under the Convention Against Torture, and that the removal proceedings were not fundamentally unfair or in violation of petitioner's due process rights.  *Fraser v. Gonzales*, 2006 WL 1934846 (5th Cir. July 12, 2006).

The essence of petitioner's claims is that he is entitled to immediate release from detention pursuant to *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), because he has been held pending deportation since 2001.[3]

_____

[3] While petitioner appears to assert that he is entitled to release under the equal protection clause, a closer reading of his "Motion to Be Release From Physical Confinement" (Doc. #19)

**DISCUSSION**

With respect to detention, release, and removal of aliens ordered removed, Title 8 U.S.C. § 1231(a) gives the Attorney General a 90-day period to accomplish the removal of an alien following the entry of a final order of deportation.  Title 8 U.S.C. § 1231(a)(1)(B) provides:

> The removal period begins on the latest of the following:
>      (i)   The date the order of removal becomes administratively final.
>      (ii)   If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>      (iii)  If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

Title 8 U.S.C. § 1231(a)(1)(C) provides that

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

If a court reviewing a removal order has stayed the deportation order, then issues a final order deciding the case and dissolving the stay, the removal period begins anew pursuant to 8 U.S.C. § 1231(a)(1)(B)(ii).

---

reveals a claim that he and similarly situated detainees who have been detained for periods of time pending deportation, which petitioner deems "unreasonable and unjustifiable," should be released under supervision pending deportation.

9

The Supreme Court held in *Zadvydas v. Davis*, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), that § 1231(a) authorizes detention for a period reasonably necessary to accomplish the alien's removal. *Id.* at 699-700, 121 S.Ct. at 2504. The court found that six months is a presumptively reasonable period of time to allow the government to remove an alien after the removal period has commenced. *Id.* at 701, 121 S.Ct. at 2505. The Supreme Court further stated that:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*Id.*

In *Akinwale v. Ashcroft*, 287 F.3d 1050 (11th Cir. 2002), a resident alien who had been ordered deported to his home country of Nigeria alleged that his indefinite detention violated *Zadvydas*. Akinwale was taken into custody by the Immigration and Naturalization Service, and he filed a § 2241 habeas corpus petition four months later. The trial court found that Akinwale did not present any factual allegations indicating

10

indefinite detention pending removal.  The appellate court agreed, stating that at least six

months must elapse between an alien's entry into INS custody and the filing of a habeas

corpus petition alleging a *Zadvydas* violation:

> in order to state a claim under *Zadvydas* the alien not only
> must show post-removal order detention in excess of six
> months but also must provide evidence of a good reason to
> believe that there is no significant likelihood of removal in
> the reasonably foreseeable future.

*Id.* at 1052.  Further, it found that Akinwale had not presented any facts indicating that

the INS was incapable of executing his removal to Nigeria, resulting in an indefinite

detention.  The Eleventh Circuit also noted that after he was taken into INS custody,

Akinwale interrupted the running of time under *Zadvydas* by seeking and obtaining a

stay of deportation; therefore, he did not have even one unencumbered month of

detention, let alone six.  *Id.* at 1052 n.4.  The appellate court relied on 8 U.S.C.

§ 1231(a)(1)(C), which states that the "removal period shall be extended . . .if the alien

. . . acts to prevent the alien's removal subject to an order of removal."  The court noted

Akinwale's choice to "simultaneously challenge issues related to his removal order and

his post-removal period detention."  *Akinwale*, 287 F.3d at 1052 n.4.

In petitioner's case, he obtained stays of his order of removal during his

challenges to that order and to the underlying convictions which resulted in the order of

removal.  Therefore, under 8 U.S.C. § 1231(a)(1)(B), the removal period did not begin

to run until at least September 1, 2006, when petitioner's challenges to the removal order and underlying convictions were finally resolved.[4]   *See Fahim v. Ashcroft*, 227 F.Supp.2d 1359 (N.D.Ga. 2002) (filing of petition for review of removal order tolls running of six-month presumptive removal period); *Bartholomeu v. District Director, Immigration & Naturalization Svc.*, 487 F.Supp. 315, 319-20 (D.Md. 1980) ("where the alien seeks to avoid his deportation by resort to various judicial proceedings, the six month period . . . is extended and the alien cannot secure his release from custody when, due to his own actions, he has been detained pursuant to a deportation order that is more than six months old."). If the removal order is considered final as of September 1, 2006, the six-month presumptive detention period has just expired.

In addition to the fact that the removal order has only been final for a period of six months, petitioner also has not demonstrated a significant unlikelihood of his removal to Jamaica in the reasonably foreseeable future. First, petitioner has alleged no institutional barriers to the repatriation of aliens to Jamaica. The United States has a repatriation agreement with Jamaica. In *Zadvydas*, the Supreme Court considered the cases of two aliens and found that both demonstrated that there was no significant likelihood of removal in the reasonably foreseeable future, necessitating their release

---

[4] It is noted that the United States District Court for the Eastern District of New York transferred petitioner's successive § 2255 motion, asserting a *Blakely* claim, to the Second Circuit Court of Appeals on September 1, 2006, for possible certification. Therefore, the effective "final" date may be considered to be even later than September 1, 2006, pending action by the Second Circuit Court of Appeals.

from custody. One alien was from Cambodia, a country with which the United States has no repatriation agreement. As a result, there was virtually no hope of repatriating that alien back to his native land. *Zadvydas*, 533 U.S. at 686, 121 S.Ct. at 2496-97. The other alien was born in a refugee camp in Germany in 1948 and was not a citizen of any country; therefore, no other nation ever would accept him, no matter the efforts of the INS. *Id.* at 684, 121 S.Ct. at 2495-96. The facts surrounding petitioner's detention differ considerably from the facts in *Zadvydas*.

Petitioner also has made no showing that there are particular individual barriers to his repatriation to Jamaica. Travel documents have been requested from Jamaica, and the Jamaican Consulate has confirmed that Fraser is a citizen of Jamaica. The lack of actual travel documents from the Jamaican government does not in and of itself meet petitioner's burden of showing that there is no significant likelihood of removal.[5]

In short, petitioner has not alleged facts indicating that Jamaica will never issue him papers, nor has he alleged any reasons why Jamaica would not ultimately comply with a request from the United States government in this particular instance, now that

---

[5] In *Salaam v. United States Dep't of Homeland Security*, 2006 WL 3257086 (D.N.J. November 9, 2006), the court noted that travel documents had been requested for the petitioner and the Jamaican consulate advised that they were willing to issue travel documents upon resolution of the petition for review of the removal order. The court also noted that the petitioner had received a custody review at which time it was decided to continue his detention. In *Stone v. Dep't of Homeland Security*, 2006 WL 1286211 (D.N.J. May 9, 2006), the court held that the petitioner was not entitled to release pending deportation because the six-month removal period had not expired, the petitioner was afforded individualized custody review, and there was no indication of delayed deportation once a judicial stay on deportation was lifted.

petitioner's pending litigation with respect to the order of removal and underlying convictions has been concluded.  Further, petitioner has received an individualized custody review, and it was concluded that he posed a risk of flight and danger to the community.[6]

The Court concludes that petitioner, in effect, seeks to place the burden on the government to show when it will remove petitioner.  However, in *Zadvydas*, the Supreme Court held that it is petitioner's burden first to show good reason to believe that there is no significant likelihood of removal.  All petitioner has shown is the passage of some time, during much of which petitioner has had litigation pending, preventing his removal. Unlike the aliens in *Zadvydas*, for whom deportation seemed impossible no matter how long they waited, there is no reason to believe that Fraser will not ultimately be returned to Jamaica.

The petitions will be dismissed, without prejudice to petitioner's ability to bring a new petition should circumstances warrant.  An appropriate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

---

[6] The facts underlying petitioner's federal conviction are detailed in the presentence report submitted by respondent in Case Number 4:04-cv-02431-WMA-HGD, and were considered by the Immigration and Naturalization Service in petitioner's custody review.  (*See* Doc. #15, Ex. J., Presentence Report and Attestation).

14

DONE this 20th day of March, 2007.

**WILLIAM M. ACKER, JR.**
**UNITED STATES DISTRICT JUDGE**

cc:   Honorable Harwell Davis
      Honorable David Proctor

15